(156 App. Div. 79.)

### In re ZATULOVE.

(Supreme Court, Appellate Division, First Department. April 4, 1913.)

ATTORNEY AND CLIENT (§ 53*)—DISBARMENT—AIDING ADMISSION TO BAR.

　　Evidence *held* sufficient to authorize a disbarment on the ground that the attorney knowingly executed a false affidavit as to the term of service a law student served in his office, thereby fraudulently procuring the student's admission to the bar.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. § 53.*]

Disbarment proceedings against Martin Zatulove. Disbarment ordered.

See, also, 152 App. Div. 885, 136 N. Y. Supp. 1151.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City, for petitioner.
Edward Lauterbach, of New York City, for respondent.

INGRAHAM, P. J. The respondent was admitted to practice in June, 1904, and on June 7, 1909, he signed and verified an affidavit that one William B. Singer had served a regular clerkship in the respondent's law office at 309 and 350 Broadway, commencing on the 28th of June, 1906, and ending on the 27th of February, 1909; and he further deposed that during the service of said clerkship as aforesaid the said Singer did not take more than two months' vacation in any one year, the vacations taken by the said Singer being as follows,

to wit: From July 5, 1906, to July 19, 1906, and from August 1, 1908, to August 8, 1908. This affidavit was duly filed with the board of law examiners. This affidavit was on a single sheet of paper, and the dates were immediately above the respondent's signature. Singer did not take his examination in June, and another affidavit was required to be filed before the board of law examiners in September, whereupon the respondent made another affidavit which he verified on the 28th of September, 1909. In that affidavit he deposed that Singer served a regular clerkship in the respondent's law office at 309 and 350 Broadway commencing on the 28th of June, 1906, and ending on the 27th of February, 1909, with a similar statement to that in his first affidavit as to the vacations, and containing, also, a statement that during the entire period of such clerkship, except during the stated vacations, the applicant was actually employed by the respondent as a regular law clerk and student in his law office, and under his direction and advice engaged in the practical working of the office during the usual business hours of the day. This affidavit was filed with the board of law examiners, and on that affidavit Singer was admitted to and passed the examination, and was duly admitted to practice.

The second affidavit appears to have been on two typewritten sheets of paper; the statement of the period of law clerkship and the vacations being upon the first sheet, and the signature of the respondent and of the notary public being on the second sheet. Both of these affidavits were false. Singer was a student in the respondent's office from June, 1906, to some time in October, 1906, and after October, 1906, the respondent had no connection with Singer.

The respondent appeared before the grievance committee of the bar association, and when shown the second affidavit sworn to in September, 1909, he denied having verified the affidavit, and claimed that the first page had been interpolated, and that the affidavit that he signed correctly stated the correct period of Singer's clerkship. He was then shown the affidavit verified in June, and he announced that that was a forgery, and that he had never signed it. Subsequently when his attention was called to the signature of the notary public on the first affidavit—that verified in June—he said he did not mean to say positively that it was a forgery, but the signature did not look natural, but that he did not remember signing the June affidavit; and then refused to say whether or not it was his signature. The charges were then presented to this court to which the respondent interposed an answer. The case was then referred to an official referee, who has reported that the charges were proved, and the case now comes before the court for action upon the referee's report.

The notary public before whom both of these affidavits were verified who was a member of the bar was called as a witness, and stated that he occupied offices with the respondent from May, 1908, to May, 1911; that the respondent appeared before him and swore to the truth of the facts contained in those two affidavits; that he hired the offices and employed all the clerks, stenographers, and other employés therein; that the respondent had no clerks in his employ during this period; and that Singer was not a clerk in the office during the pe-

riod from May, 1908, to May, 1911. These offices were at 309 Broadway, the offices stated in the respondent's affidavit as the office in which he employed Singer.

Singer was then called as a witness, and testified: That these two affidavits were filed by him with the state board of law examiners at the time he applied for permission to take the examinations. That some months prior to the filing of the June affidavit he met the respondent on Broadway, when Singer's taking the bar examinations in June was mentioned. The respondent asked Singer who he had been with, and was told he had been with two attorneys named, and further told the respondent that, when he was ready to take his examinations, he would come up and see him, the respondent, for an affidavit. Subsequently, when he required the affidavit, Singer went to see the respondent, and stated that he was with Mr. Petrasch from September or October, 1906, until some time in May or June, 1907, with Mr. Rider from May or June, 1907, until February, 1909, and with his (Singer's) brother from February, 1909, until he took his examinations. That the respondent asked Singer whether he had filed certificates of clerkship with these different attorneys and Singer said he had not, when respondent said:

"Well, you cannot take your bar examinations. You have got to file the certificate of every lawyer you were with; but I know you were with these fellows, and I know you have been in a law office these three years. Draw up an affidavit covering the time, and I will sign it for you."

That Singer went back to his office, dictated an affidavit which was the affidavit verified in June, 1909, and took it to the respondent. That the respondent read it over carefully, took it into the notary's room, came out with it verified and gave it to Singer, and Singer subsequently filed the affidavit. After this first affidavit was verified and filed, it was ascertained that the time was not sufficient to allow Singer to take his examinations. Singer again went to the respondent, and told the respondent that his first examination had been canceled because the time was not sufficient, and that the examiners would not let Singer take another examination unless the respondent would sign a new affidavit. He had prepared a second affidavit, the one verified in September, and had it with him. The respondent took this second affidavit, went in before the notary, and returned with it signed and verified. On that Singer filed the affidavit with the board of law examiners, and was allowed to take the examination. The witness produced a printed blank of attorney's affidavit of the service of a clerkship which had been filled up for one Buchler to sign, but had been changed in pencil to make it an affidavit of the respondent. He said that he had this printed form of affidavit, exhibited that to the respondent, and he and the respondent went over it together and the changes in pencil that were made were made by Singer after consultation with the respondent; that the parts filled in in ink in this blank affidavit had been filled in before Singer went to the respondent's office, and that the pencil changes were made in the respondent's office, and in the presence of the respondent and with his assent. It is apparent that the affidavit verified in June is an exact copy of this

affidavit.  Singer swore that he saw respondent sign these two affidavits; that they were exactly in the condition they were in when the respondent signed them, and that no changes or substitutions were made after they were signed; that it was also a fact that the only period that Singer was a clerk with respondent was from June 28, 1906, to September or October, 1906.  Singer was cross-examined by the respondent, but his testimony·was not at all shaken.  The respondent was called as a witness, and admitted that these affidavits were false.  It is a little difficult to see what motive Singer would have in committing perjury.  Similar charges had been preferred against him by the bar association for obtaining his right to submit to an examination by the filing of these false affidavits.  His testimony would not at all excuse him as by it he admitted that the affidavits were false, that he knew they were false when he filed them, and he had procured his admission to the bar on the faith of them.

The respondent testified that Singer came to work for him at 350 Broadway in the month of June, 1906, and stayed with him up to October of that year; that subsequently Singer came to the respondent's office occasionally, and performed some work for him; that in the year 1909 Singer came to the respondent, and asked respondent for an affidavit of clerkship, and exhibited to the respondent a printed form of the papers that were necessary for the making of the application for admission to the bar, and that he prepared on that draft a copy of an affidavit for the respondent to swear to that contained a statement of the clerkship of about four months and a half.  This corroborates Singer's statement that he had this draft that he produced at respondent's office, and that he and the respondent went over it to fix the time that Singer's clerkship continued.  As before·stated, that blank is produced, and there is nothing on it indicating any erasure.  It is impossible that on this paper there should have been written a statement of the correct clerkship with the vacations from the 28th of June, 1906, to October, 1906, and that that had been erased, and the period of clerkship inserted as appears in this original draft as lasting from May 28, 1906, to the 27th of February, 1909.  In this blank affidavit the office of the respondent is stated as having been at 309 and 350 Broadway, and it is quite evident that they were inserted at the time the draft was prepared.  Respondent further testified that after this blank had been filled in Singer took it away with him to have it typewritten; that he subsequently came back with his application papers together, and submitted the copy to the respondent and asked him to sign his affidavit; that respondent asked him whether he prepared it in accordance with the draft that they had made, and Singer said, "Yes," and respondent then signed the affidavit; that Singer took it before the notary, the notary asked the respondent whether he had signed it, and the respondent said, "Yes," and the notary then signed it and delivered the papers to Singer.  This apparently contradicts the notary, who says that the respondent came before him and verified the affidavit.  The respondent said he did not read the affidavit, as he was busy at the time.  In September Singer returned, and said there was some error in his papers, and asked the

respondent to re-execute his affidavit; that Singer then presented a batch of papers to the respondent, and, turning to his affidavit, the respondent asked him whether it was a copy of the affidavit which he had formerly signed, to which Singer said, "Yes," and that respondent signed it, took it to the notary, again told the notary that he signed the paper, and that was the end of it. The respondent was then asked whether he read this second September affidavit, and he said he did not remember; but subsequently positively stated that he did not read it. The respondent further testified that he had never before verified an affidavit without reading it; that he would never permit a client to verify an affidavit without reading it; and yet he verified these two affidavits without reading them.

I think from a consideration of this testimony that there can be no escape from the conclusion that this respondent knowingly signed and swore to these affidavits, and, when he did it, he knew that he was swearing to a statement which was not true. He knew that on these affidavits of his depended the right of Singer to be admitted to practice. He knew that he was swearing to the truth of the statements contained in the affidavit, and yet, according to his own statement, he was so careless that he did not even take the trouble to see whether the facts that he was swearing to were correctly stated in the affidavit or not. We have constantly called to our attention the fact that affidavits presented to the court are signed and verified with a reckless disregard of the truth of the facts contained in them, and certainly it is no light offense for an attorney and officer of the court to swear to a fact as true which was not true, and he cannot escape from the effect of the offense by saying that he signed the paper without reading it or without knowing its contents. Attorneys at law, being officers of the court, must understand that they are responsible for the truth of what they assert in affidavits; and, if they deliberately swear to an affidavit which is false, it is an offense which cannot be condoned, and which cannot be explained.

We agree with the referee that the respondent was guilty, and he must be disbarred. All concur.