In the Matter of SOLOMON JACOBSON, an Attorney, Respondent.

First Department, February 27, 1942.

*Einar Chrystie*, for the petitioner.

*Henry Flugelman*, for the respondent.

UNTERMYER, J.   The respondent was charged with filing an affidavit with the Committee on Character and Fitness which misstated the extent to which one Max Weiss had worked as a clerk in his office, in an effort to assist Weiss in obtaining admission to the bar.   In that affidavit he set forth that for the period beginning February 14, 1936, and ending February 27, 1937, Weiss had engaged in the work of the office " during the usual business hours of the day, to wit: from 9 A. M. to 4:30 P. M. during week days and from 9 A. M. to 1 P. M. on Saturdays."   The records of the Western Union Telegraph Company disclosed, however, that during that period Weiss had worked for that company during the following hours:

February  14 to February 24, 1936 —  4:00 P.M. to 10:30 P.M.
February  24 to March      9, 1936 —  3:00 P.M. to 10:00 P.M.
March      9 to March     23, 1936 —  2:00 P.M. to  8:30 P.M.
March     23 to March     30, 1936 —  2:30 P.M. to  9:00 P.M.
March     30 to April      2, 1936 — 11:00 P.M. to  5:30 P.M.
April      2 to April     20, 1936 —  4:30 P.M. to 11:00 P.M.
April     20 to May       18, 1936 —  4:30 P.M. to 12:00 mid.
May 18, 1936, to February 27, 1937 —  4:30 P.M. to  1:00 A.M.

and that accordingly for approximately six weeks from February 14 to April 2, 1936, he had failed to engage in the work of the respondent's office during the hours specified in the respondent's affiavit.

When these facts were brought to the attention of the Committee on Character and Fitness and the Committee on Grievances of the Association of the Bar, the respondent, unlike Weiss, made no effort to contest or deny the charge but freely conceded the

inaccuracy of his affidavit and expressed contrition for his act in filing it. In extenuation he pleads that this is the only dereliction of which he has ever been accused and that without fully realizing the significance of his act he yielded to the importunities of Weiss, whom he had known for many years and whose financial circumstances made it necessary that he work as a telegraph operator in the evening while engaged in the work of clerkship by day. He contends that the affidavit cannot fairly be characterized as willfully false but was rather a heedless and exaggerated statement of the facts. The respondent has submitted to the court a great number of letters and affidavits by attorneys and educators attesting to his character and integrity.

Although we have no intention to condone the respondent's act in filing the affidavit, certain facts are relevant in extenuation of the offense. The affidavit was true in most particulars. It was true that Weiss had served as a clerk in the respondent's office during the specified period, though not with the regularity nor to the extent set forth in the affidavit. The respondent's act in filing the affidavit was not animated by any selfish purpose of gain or personal advantage, but by the appeal of Weiss who had encountered the same financial impediments which the respondent had known in preparing for admission to the bar. When thus considered against a record of integrity and the candor with which he has met this charge, we think the respondent's misconduct deserves something less than the extreme punishment of disbarment.

This court has not been inexorable in dealing with misconduct of attorneys. We have properly taken into account all the circumstances surrounding the offense. We have not hesitated to impose a mere suspension from practice even in cases where the attorney has been guilty of a similar offense when his previous record and his conduct throughout the proceeding seemed to warrant such a course. We cite only a few of such cases thus decided by this court (*Matter of Braun*, 246 App. Div. 206; *Matter of Gavrin*, 242 id. 490; *Matter of Finkel*, 248 id. 369; *Matter of Hendrick*, 229 id. 100; *Matter of Hemlin*, 256 id. 195). The decision in *Matter of Zatulove* (156 App. Div. 79) is not inconsistent with these views, for in that case the attorney had filed an affidavit stating that the applicant had served a clerkship for nearly three years, whereas during the latter two and one-half years of that period he had had no connection with the office of the attorney. Furthermore, in the proceedings against the attorney, he had persistently asserted that the affidavit was a forgery.

Taking into consideration all the circumstances, we think the respondent should be suspended from practice for two years, with

leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

COHN and CALLAHAN, JJ., concur; MARTIN, P. J., and TOWNLEY, J., dissent and vote for disbarment.

MARTIN, P. J. (dissenting). The respondent was charged with knowingly submitting a false affidavit to the Committee on Character and Fitness for the purpose of deceiving that committee and the Appellate Division in an effort to assist a Mr. Weiss to obtain admission to the bar of this State.

In the complaint filed by the Character Committee with the Association of the Bar, dated April 24, 1940, it was stated that:

" In his application for admission to the bar Max Weiss, who resides at 10 West 182d Street, New York City, filed an affidavit in which he stated that he served a law clerkship in the law office of Solomon Jacobson, 165 Broadway, commencing on February 14, 1936, and ending on February 27, 1937. In the same affidavit he further states: ' That during the entire period of such clerkship he was actually employed by said attorney as a regular law clerk and under his immediate supervision, direction and advice, was engaged in the practical work of the office during the usual business hours of the day, from nine a.m. to four-thirty p.m. weekdays, and on Saturday from nine a.m. to one p.m.' The affidavit is dated September 8, 1937, sworn to before Martin Siegelbaum, notary public.

" Also with his application for admission to the bar Mr. Weiss submitted an affidavit of Solomon Jacobson, an attorney, with offices at 165 Broadway, in the Borough of Manhattan, residence 28–15 — 34th Street, Borough of Queens. In his affidavit Mr. Jacobson states that the applicant, Max Weiss, served a regular law clerkship in his office beginning on February 14, 1936, and ending on February 27, 1937, and that ' during the entire period of such clerkship the applicant was actually employed by deponent as a regular law clerk in his law office and was under deponent's supervision, direction and advice, actually engaged in the practical work of the office during the usual business hours of the day, to wit: from 9:00 a.m. to 4:30 p.m. during week days and from 9:00 a.m. to 1:00 p.m. on Saturdays.' Mr. Jacobson's affidavit is dated September 10, 1937, and was sworn to before Benjamin Sharaga, notary public.

" In his questionnaire Mr. Weiss states that he ' was employed as a telegraph operator while serving a law clerkship, working at this occupation from 4:30 p.m. to 10:30 p.m. daily. This was

done with knowledge and approval of the attorney whom I worked for.' "

The complaint set forth the dates and hours of applicant's actual employment by the Western Union Telegraph Company as furnished by the company showing a conflict between the hours of employment and the hours of clerkship and when told of this conflict the applicant said the telegraph company had made an error and that he would have the company write a letter correcting the error; that instead of doing so he filed with the committee a so-called explanatory affidavit in which he said the misstatements as to his hours were not made with intent to deceive the committee but were an oversight on his part.

The letter from the Character Committee to the Grievance Committee of the Bar Association sets forth that:

" * * * the Committee is of the opinion that the applicant deliberately intended to deceive the Committee by swearing to a false affidavit, and it is, therefore, recommending to the Appellate Division that his application for admission to the bar be denied.

" In view of the fact that Attorney Solomon Jacobson made an affidavit in which he swore that during the period of clerkship the applicant Weiss had served from nine a.m. to four-thirty p.m. each day, and from nine a.m. to one p.m. on Saturday, and in further view of the facts developed, this Committee felt that the matter should be brought to the attention of your Committee for whatever action it may deem appropriate."

The respondent admits the facts alleged in the petition. In answer thereto and in alleged extenuation he offered his affidavit, which is in part as follows:

" In December of 1935 Max Weiss, whom I had known almost all my life, came to me and told me that in view of his employment by the Western Union Telegraph Company which requires him to be at his work at about 4:30 in the afternoon, he is unable to obtain a clerk's position in a law office. He stated that he could not possibly give up his employment with the Western Union because he is married and has to support his wife and himself. He also stated that he makes contributions for the support of his mother. He therefore requested that I allow him to serve a clerkship with me.

" I indicated to Max Weiss that my law practice was entirely too meager to warrant the employment of a clerk, and that I certainly was unable to pay a clerk. However, he pleaded with me to help him by permitting him to serve his clerkship with me without compensation. Feeling sorry for him, I consented.

"However, instead of serving a 'regular law clerkship' with me, he came to the office only irregularly and occasionally. When I stated that he served a 'regular law clerkship' I did not state the truth. As I have admitted, he came to the office from time to time in irregular intervals. Even when he came, he did not stay for the usual business hours of the day. He came and went as he pleased. * * *

"When I signed the affidavit of Max Weiss, I had no evil or self-seeking intention. I signed it thoughtlessly and without realizing fully what I was doing. At that time, I was in a bad state of mental distress. My father was unemployed and conditions at home were poor indeed. Because I did not earn enough to help my parents, to any appreciable extent, I was in a mentally depressed state.

"At the same time, I was in poor health. I was suffering from a kidney condition which was diagnosed — after I was seized by a severe renal colic on October 14, 1940 — as a stone in the kidney.

"While I was thus in poor physical condition, and beset by economic worries, Max Weiss pleaded with me to sign the affidavit. He played upon my sympathies, and made an appeal to my emotions. I succumbed to his pleas and signed the affidavit. I now realize that I have made a grievous mistake and I deeply regret that I committed this act of misconduct."

The above-quoted confession discloses that at the very outset Weiss informed the respondent that because of conditions in his home he could not devote the time necessary to serve a clerkship.

The conduct of this experienced lawyer in signing a false affidavit is, alone, sufficient to warrant a disciplinary action. The uncontradicted facts in this case reveal other misconduct of a serious nature. Quite obviously the respondent and the appellant Weiss, prior to the commencement of the latter's alleged clerkship in February, 1936, conspired to deceive the Committee on Character and Fitness and the Appellate Division, First Department, which conspiracy culminated in the filing by the respondent and the applicant of false affidavits in September, 1937, more than a year and a half later. That fact is clearly established by the quotations from the answering affidavit of the respondent in which he admitted that Weiss stated that he could not obtain a clerk's position in a law office for the reason that he could not give up his employment. The respondent, therefore, sought to aid a candidate to gain admission to an honorable profession although he knew the applicant was not qualified for such membership. In addition to his own perjury, he aided and abetted the candidate to commit perjury.

It is not only the duty of this court to uphold the Committee on Character and Fitness but to remove from the bar of this State all members who, by misconduct, have demonstrated their unfitness to continue therein. The court will not allow its performance of that duty to be influenced by pleas such as have been interposed by this respondent. The claim of impaired health is frequently made an excuse for wrongdoing. That it is made for the sole purpose of obtaining sympathy is very obvious.

An attorney who permits sympathy for a friend to induce him to commit perjury and to overcome his sense of duty and responsibility as a member of the legal profession, or who, by such conduct, shows that he does not appreciate the obligations that go with his office as attorney, is unfit to continue as a member of the Bar.

Many years ago our predecessors in this court took a firm stand against attorneys thus endeavoring to perpetrate deliberate frauds on the Committee on Character and Fitness and the Appellate Division.

In *Matter of Zatulove* (156 App. Div. 79), in disbarring an attorney for making a false affidavit that an applicant for admission to the bar had served a regular clerkship in his office, Mr. Presiding Justice INGRAHAM, writing for the court, said: " I think, from a consideration of this testimony, that there can be no escape from the conclusion that this respondent knowingly signed and swore to these affidavits, and when he did it he knew that he was swearing to a statement which was not true. He knew that on these affidavits of his depended the right of Singer to be admitted to practice. He knew that he was swearing to the truth of the statements contained in the affidavit, and yet, according to his own statement, he was so careless that he did not even take the trouble to see whether the facts that he was swearing to were correctly stated in the affidavit or not. We have constantly called to our attention the fact that affidavits presented to the court are signed and verified with a reckless disregard of the truth of the facts contained in them, and certainly it is no light offense for an attorney and officer of the court to swear to a fact as true which was not true and he cannot escape from the effect of the offense by saying that he signed the paper without reading it or without knowing its contents. Attorneys at law, being officers of the court, must understand that they are responsible for the truth of what they assert in affidavits and if they deliberately swear to an affidavit which is false it is an offense which cannot be condoned and which cannot be explained. We agree with the referee that the respondent was guilty and he must be disbarred."

The same court in the next reported opinion, *Matter of Singer* (156 App. Div. 85), disbarred the respondent therein, who had been admitted to practice on the false affidavits which he and Zatulove had submitted. We, therefore, have two similar authorities in this court, differing only in the fact that they were not as aggravated as the case now here. In the cases above referred to it was held that lawyers must be disbarred who submit false affidavits and resort to perjury for the purpose of securing admission to the bar.

To the same effect see *Matter of Bauder* (128 App. Div. 346); *Matter of Kristeller* (154 id. 556); *Matter of Greenbaum* (161 id. 558); *Matter of Cebulsky* (169 id. 636); *Matter of Gladstone* (185 id. 471). We are now asked to disregard these numerous authorities and in effect say that the standards of this court have changed. We are unwilling to subscribe to any such statement.

The cases cited in respondent's favor have no bearing on the points here under consideration. It is quite true, as stated by Mr. Justice UNTERMYER, that this court takes into consideration the conduct of the attorney in each disciplinary proceeding. It is also true, however, that this court has not, up to the present time, condoned the crime of perjury.

The application of Weiss for admission to the bar was rejected on the ground that he was not fit for membership in an honorable calling. We should not permit the experienced respondent, a co-conspirator with Weiss, who has shown himself to be unfit, to remain a member of the legal profession. To do so would be a reflection on the bar and this court.

The respondent should be disbarred.

TOWNLEY, J., concurs.

Respondent suspended for two years.