In the Matter of FREDERICK J. MILLER, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, March 4, 1965.

*John G. Bonomi* (*Richard A. Nachman* with him on the brief), attorney for petitioner.

*Harold O. N. Frankel* (*Samuel Friedlander* with him on the brief), attorney for respondent.

*Per Curiam.* Respondent in this disciplinary proceeding is an attorney, 42 years of age, who was admitted to the Bar in this Department in 1949. He has been charged with two instances of unauthorized placing out of a child for adoption in violation of subdivision 2 of section 374 of the Social Welfare Law and receiving compensation therefor in violation of section 487-a of the Penal Law.

Prior to the commencement of this proceeding, a four-count information was brought against respondent charging him with

the misdemeanors of placing out and with requesting and accepting compensation for placing out, with respect to the same two incidents charged in this proceeding. Respondent was convicted on a plea of guilty to one count of unauthorized placing out of a child, and received a suspended sentence.

Since respondent has admitted the allegations of the charges, the testimony taken by the Referee was concerned largely with respondent's claim that his previous conduct was exemplary and that the two incidents of placing out involved no moral turpitude or criminal intent on his part.

The Referee's report, finding the respondent guilty of the charges, should be confirmed. In view of related circumstances, both in aggravation and in mitigation of the charges, the penalty for respondent's professional misconduct should be suspension from the practice of law for a period of two years.

Except for a period of about eight months when he was associated with a law firm, respondent has always practiced alone, although occasionally he has employed a clerk. His practice consists of a very large number of small cases. The practice appears to be general in nature, including landlord and tenant, criminal and domestic relations matters. Respondent described his practice as that of a neighborhood "legal clinic."

Respondent's violations of the law are simply stated. Without having qualified as an "authorized agency" under the Social Welfare Law respondent undertook to provide for the care of two children not related to him, on two separate occasions, by placing each of them in a family other than that of a relative within the second degree (Social Welfare Law, § 371, subds. 10, 12; § 374, subd. 2). Such conduct is a misdemeanor (id. § 389). By requesting or accepting compensation for placing out a child respondent has, in addition, violated subdivision 6 of section 374 of the Social Welfare Law and subdivision 1 of section 487-a of the Penal Law. This also constitutes a misdemeanor; a violation after a previous conviction would be a felony (Penal Law, § 487-a, subd. 5; Social Welfare Law, § 389, subd. 2). The amounts received by respondent for the children ($2,000 and $3,000 respectively) were roughly twice what he paid the mothers, directly or indirectly, for the children. By contrast, respondent's fee for handling a legal adoption where the arrangements had been already worked out by the parties was usually only $125 to $200.

The purposes behind the statutory restrictions and regulation of placing out children can be inferred from the very difficulties encountered in these two incidents. In one case the foster parents, having later adopted the child, came to question and to

object to the racial identification of its ancestors and belatedly turned the child over to an authorized placement agency. Respondent refunded the full amount paid to him. In the other instance the child's natural mother and father requested the return of the child before it had been actually adopted by the foster parents. After further financial negotiations between all of the parties involved the natural parents were apparently paid additional sums and permitted the adoption to be concluded.

Although respondent admitted having participated in a third similar placement, the Referee quite properly concluded that respondent did not make it a business of placing infants for money. In one case the mother's desire to place the child was communicated to respondent by an old friend, and in the other case by an old client. Respondent actually testified that he obtained the second child, originally intending it to be a " surprise " for his sister; although she had previously expressed some interest in an adoption, she declined to accept it. In these several respects this case is unlike *Matter of Slater* (8 A D 2d 169) where the respondent had concededly placed 15 or more children and had maintained an office in Florida where a secretary's time was devoted to child placement and adoption matters, and where the respondent had actually advertised in newspapers both for babies and for adoptive parents. Under those circumstances this court concluded that the respondent was guilty of actions involving professional misconduct, malpractice and conduct prejudicial to the administration of justice. He was disbarred.

Even if these two placements involved, as respondent claims, no moral turpitude or criminal intent, it was at least morally reckless and aggravated by his conduct in a subsequent adoption proceeding involving one of the two charged placements. In an effort to insure that the adoption would be approved and with knowledge of the true facts respondent submitted to the court false affidavits of the mother and the adopting parents stating that they had known each other for some time prior to the adoption. Moreover, respondent submitted his own affidavit corroborating these affidavits and stating, contrary to fact, that he had not taken any part in the placement of the child. There was no showing in the record, and the Referee did not so find, that respondent had actually procured the false affidavits. Nevertheless his conduct in submitting to the court affidavits which he knew to be false is not far removed from outright subornation of perjury, which has met with the sternest sanction in this court (e.g., *Matter of Nicolini*, 262 App. Div. 114.)

To his credit, respondent freely admitted his guilt, and testified quite openly at the hearing before the Referee. Furthermore, respondent has shown that he has an otherwise unblemished record, that he has generally been candid and honorable in his dealings with others and with the courts, and that he has readily accepted matters for little or no compensation, including court-assigned cases. These factors merit consideration (*Matter of O'Doherty*, 14 A D 2d 4, 10, affd. 11 N Y 2d 1028; *Matter of Switzer*, 17 A D 2d 589).

There remains the question of the discipline which should be imposed. Where an attorney is charged with having committed a misdemeanor, thereafter admitted by him without attempt at concealment or evasion, the courts have not imposed the gravest sanctions, even where, as here, there has been a criminal conviction for the misdemeanor (*Matter of Rotwein*, 20 A D 2d 428; *Matter of Ward*, 18 A D 2d 15; *Matter of Hettrick*, 203 App. Div. 512). On the other hand, respondent's conduct in submitting the false affidavits was reprehensible and greatly increased the magnitude of the offense, even though not specifically included in the petition as a charge. Under other circumstances this court has not hesitated to order the ultimate sanction of disbarment where an attorney is guilty of issuing false affidavits (*Matter of Zatulove*, 156 App. Div. 79).

Respondent had been admitted to the Bar only 10 years at the time of the first offense. This does not excuse his unprofessional conduct but must be considered in determining the sanction to be imposed. The Referee concluded that it was unlikely respondent would repeat the charged offenses. Moreover, his age, 42, and his record of service to his numerous clients, often for little or no compensation, suggest that after a period of suspension he will again be able to render useful legal service.

Accordingly, the Referee's report should be confirmed, and the respondent should be suspended for a period of two years.

BREITEL, J. P., RABIN, VALENTE, STEVENS and EAGER, JJ., concur.

Respondent suspended for a period of two years effective April 5, 1965.